## Basehore *et al.* versus Rhodes *et al.*

## Basehore's Appeal.

A protested draft is not an "obligation" within the meaning of the proviso of the Act of 16th of April 1850, which declares that the assignees of an insolvent bank "shall receive in payment of debts due to said bank its own notes and obligations and the checks of its depositors at par."

June 18th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the Court of Common Pleas of *Franklin county:* Of May Term 1877, No. 141. In Equity.

This bill was filed by Abraham S. and Emanuel Basehore, to restrain John P. Rhodes and Samuel S. Shryock, assignees of the Farmers' and Mechanics' Bank of Shippensburg, from proceeding by execution to collect two judgments obtained against complainants.

In substance the bill averred that the bank was a corporation chartered under the General Banking Laws of the state; that Abraham S. Basehore made a note for $2500, payable to Emanuel Basehore, which was endorsed by the latter, and in the usual course of business became the property of said bank; that said bank having become insolvent, by an order of the Court of Common Pleas it made a general assignment to Rhodes and Shryock for the benefit of creditors, under the provisions of said banking laws; that said assignes found said note among the effects of said bank, and having brought suit thereon recovered judgments against said complainants; that previous to the date of the assignment said bank had drawn a draft upon the Union Banking Company of Philadelphia for $2620.94, payable to the order of the cashier of the First National Bank of Shippensburg, which draft was protested for non-payment; that after the entering of the aforesaid judgments said draft was assigned to the complainants for a valuable consideration, and that, under the provisions of the Act of 16th of April 1850, Purd. Dig. 144, pl. 101, Pamph. L. 600, complainants had tendered the same to said assignees in payment of said judgments, which they refused to accept.

The bill then prayed for an injunction to restrain the defendants from proceeding in any manner to collect said judgments, and that they be compelled to receive said draft, at its par value, in payment of the same.

The answer admitted the truth of the several averments of the bill, with the exception of that which alleged that the draft had been assigned for a valuable consideration.

The court (Rowe, P. J.) refused the injunction and dismissed the bill, holding that said draft was not such an "obligation" as was contemplated by the Act of 1850, and that the assignees were

[Basehore v. Rhodes.]

justified in refusing to receive it in payment of a debt due the bank.

This ruling was, *inter alia*, assigned for error by the complainants, who took this appeal.

*Kennedy & Stewart*, for appellants.—Used in its ordinary sense the word " obligations" would certainly be understood to include this draft.   The word has no technical meaning which necessarily prevails in statutory enactments.   It is a general word and its precise meaning is to be determined by the connection in which it is used.   It has never received a judicial interpretation that restricts it to any particular kind of engagement or contract.   The Act of 1850 is but a rescript, in many of its provisions, of the Acts of May 4th 1841, and March 12th 1842, in which language is employed which shows that the word "obligations" means " evidences of debt."   It cannot be supposed that the legislature intended by the change to restrict and limit the evidences of debt that are receivable by the assignee, for if such had been their purpose they would not have adopted a word which, in its ordinary and natural sense, embraces every possible evidence of debt, and which is without any special technical signification that would make it appropriate for the purpose.

*F. M. Kimmell* and *Brewer & Gehr*, for appellees.—It has never been decided in Pennsylvania that a debt like the one offered by the appellants was embraced in the word " obligations" as used in the Act of Assembly.   But whenever any question has arisen about the duty and power of the assignees to receive the notes and obligations in the payment of debts, they have been treated and regarded as meaning one and the same thing : Philips v. Bank of Lewistown, 6 Harris 394.   It was manifestly the purpose of the legislature to give a preference to the holders of notes over all others, and it is obvious therefore that it was not their intent that a protested draft should be received in payment.   It can hardly be supposed that the legislature intended to establish one rule for the collection of the assets of an insolvent bank, and to furnish another and wholly different rule for the distribution of the fund.   In the distribution, the common debts of the bank are put in the third class ; but the interpretation set up on the other side would place them in the first class, and prefer them in the collection of assets of the bank.

Chief Justice AGNEW delivered the opinion of the court, June 25th 1877.

The plaintiffs in this bill claim to pay a judgment in favor of the Farmers' and Mechanics' Bank upon a note in the hands of the assignees of that bank, with a protested draft drawn by the bank in favor of the First National Bank of Shippensburg

[Basehore *v.* Rhodes.]

upon the Union Banking Company of Philadelphia; and by the
National Bank of Shippensburg sold to the plaintiffs after the
judgment had been obtained by the assignees upon the note against
the plaintiffs.    This claim to pay the judgment with the draft is
founded on the proviso in the 27th section of the General Banking
Act of April 16th 1850 : Brightly 144, pl. 101.    The proviso is
in these words : "*Provided, however,* that the said assignees shall
receive in payment of debts due to said bank, its own notes and
obligations and the checks of its depositors at par."

Is the draft before mentioned an obligation within the meaning of
this proviso ?    This is the question presented.    That it is not is
clearly seen by a comparison of several sections of the Act of 1850.
In the first place it is to be noticed that the 27th section contain-
ing this proviso is that which prescribes the proceeding taken to
enforce the forfeiture of the charter of a bank, upon its refusal to
pay its notes, obligations and certificates of deposit, in specie.
The provisions as to this refusal to redeem in gold or silver coin,
are found in the three preceding sections, the 24th, 25th and 26th.
The debts thus refused to be redeemed in coin are described in
the 25th section, viz. : "Any bill, note or obligation issued by such
banks," and "any moneys received in such bank on deposit." The
section then allows twelve per cent. interest, and requires the bill,
obligation or certificate to be endorsed by the cashier, setting forth
the demand of coin and the time it was made.    The history of
this provision in the legislation of the state shows that it is intended
to compel specie payment of those bills and notes which constitute
the circulation of the bank.

But we need not resort to the history of such legislation, for the
14th clause of the 10th section of the Act of 1850 is the best inter-
preter of its meaning.    Turning to that clause we find that it pro-
vides for two distinct kinds of bills or notes, which are to constitute its
circulating obligations.    This clause enacts that the "bills obliga-
tory and of credit, under the seal of such corporations, which shall
be made to any person or persons, shall be assignable by endorse-
ment thereupon, under the hand or hands of such person or per-
sons, and of his, her or their assignee or assignees, so as absolutely
to transfer and invest the property and legal title thereof in each
and every assignee or assignees successively, and enable such as-
signee or assignees to bring and maintain an action thereupon in
his, her or their own name or names ; and bills or notes which
may be issued by order of any of the said corporations, signed by
the president and countersigned by the cashier thereof, promising
payment of money to any person or persons, his, her or their order,
or to bearer, though not under seal of such corporation, shall be
binding and obligatory upon the same in like manner and with like
force and effect as upon any private person or persons if issued by
him or them, in his, her or their private capacity or capacities, and

[Baschore v. Rhodes.]

shall be assignable and negotiable in like manner as if they were so issued by such private person or persons," &c. These are the liabilities for which provision in subsequent sections is made for their redemption in coin. It is evident that drafts or orders drawn on others are not bills, obligations or notes such as are mentioned in the 14th clause of the 10th section. This is made more plain by a reference to the sections providing for specie payment. The 24th section requires redemption of the notes of the bank in coin, and declares a forfeiture of the charter as a consequence of a failure to do so on demand. The 25th describes the mode of making demand and prescribes the duty of the cashier to make endorsement of the time of demand, and declares the consequence as a liability to pay twelve per cent. interest. The language of this section is precisely descriptive of the bills and notes mentioned in the 14th clause of the 10th section, thus : " and if any of the said banks shall at any time refuse or neglect to pay on demand in gold or silver any bill, note or obligation issued by such banks according to the contract, promise or undertaking therein expressed," &c.

These provisions indicate clearly the reason for the proviso in the 27th section, that the assignees shall receive in payment of the debts due to the bank, its own notes, obligations and the checks of depositors at par. In the 25th section, deposits are also required to be paid in coin ; and by the 39th section are placed in the second class, for distribution of the assets of the bank. When we reach the 39th section, the intention of the act becomes manifest. It declares, for the purpose of distribution, that the debts of the bank shall be divided into three classes : 1st, notes, which includes both kinds, bills or obligations under seal and notes not under seal ; 2d, deposits ; 3d, all other debts except the stock of the bank. Thus, it becomes clear that the obligations and notes required by the 27th section to be received in payment at par, are those contained in the first class, it being the policy of the state to secure payment of the circulation of the bank and thus to protect her citizens against failure. This renders it certain that drafts, orders, contracts and other debts, not falling within the description of the bills obligatory and notes mentioned in 14th clause of the 10th section, must take their place in the 3d class, and consequently are not to be accepted by the assignees in payment of debts at par. If they were, the course of distribution intended by the legislature would fail entirely, for any one might purchase the drafts or orders of a broken bank at any discount and tender them in payment to the assignees. This is not the true interpretation of the law.

> The decree of the Court of Common Pleas is affirmed, and the appellants are ordered to pay the costs, and the appeal is dismissed.